IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD J. PELTZ-STEELE,<br><br>    Plaintiff,<br><br>v.<br><br>UMASS FACULTY FEDERATION, LOCAL 1895 AMERICAN FEDERATION OF TEACHERS, AFL-CIO; MARTIN MEEHAN, in his official capacity as President of the University of Massachusetts; MARJORIE WITTNER, KELLY STRONG, AND JOAN ACKERSTEIN, in their official capacities as members of the Commonwealth Employment Relations Board; and MAURA HEALEY, in her official capacity as Attorney General of the Commonwealth of Massachusetts,<br><br>    Defendants. | No.<br><br><br>**COMPLAINT** |

1.     This action challenges the Commonwealth of Massachusetts' unconstitutional policy of appointing a labor union to speak for unwilling public employees.

2.     The First Amendment protects "[t]he right to eschew association for expressive purposes," *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2463 (2018), and "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984).

3.     Plaintiff, Richard Peltz-Steele, is a law professor at the University of Massachusetts School of Law at Dartmouth ("the University"), who is compelled against his will to accept Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO ("the Union"), as his exclusive bargaining representative for all terms and conditions of his employment.

1

4. Plaintiff does not wish to associate with the Union, including having the Union serve as his exclusive bargaining representative. Yet, Defendants, under color of state law, are forcing Plaintiff to associate with the Union against his will. This constitutes "a significant impingement on associational freedoms that would not be tolerated in other contexts." *Janus,* 138 S. Ct. at 2478.

5. This compelled association is not limited to contract negotiations. The Union also claims the right to control all grievance procedures between Plaintiff and his employer, the University of Massachusetts. Requiring all grievances to be presented through the Union stifles Plaintiff's speech, abridging his ability to express his views on matters of both personal and public concern.

6. Therefore, Plaintiff brings this case under 42 U.S.C § 1983 and 28 U.S.C. § 2201(a), seeking declaratory and injunctive relief for violations of his rights of speech and association.

**Parties**

7. Plaintiff Richard Peltz-Steele is Chancellor Professor at the University of Massachusetts School of Law at Dartmouth. He resides in Bristol County, Rhode Island.

8. Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO is a labor union with offices in this district at Research 221, 285 Old Westport Road, North Dartmouth, Massachusetts, 02747. The Union is a labor organization under ALM GL ch. 150E, § 1.

9. Defendant Martin Meehan is sued in his official capacity as President of the University of Massachusetts system ("the UMass System"). The Office of the President is located at 1 Beacon St floor 31, Boston, Massachusetts 02108. It is a public employer under ALM GL ch. 150E, § 1.

10.     Defendant Attorney General Maura Healey ("the Attorney General") is sued in her official capacity as the representative of the Commonwealth of Massachusetts charged with the enforcement of state laws, including ALM GL ch. 150E, § 5, which requires the Union to be the "exclusive representative" of Plaintiff, whether he is a union member or not. She has an office located at 105 William Street, 1st Floor, New Bedford, Massachusetts 02740.

11.     Defendants Marjorie Wittner, Kelly Strong, and Joan Ackerstein (the "CERB Defendants") are sued in their official capacities as members of the Commonwealth Employment Relations Board. The CERB is charged under the state law with certifying employee representatives for collective bargaining purposes (ALM GL ch. 150E, § 4), determining the appropriateness of the bargaining unit (ALM GL ch. 150E, § 3), certifying only one employee representative per bargaining unit (ALM GL ch. 150E, § 5), and enforcing the provision that permits unions to control grievance procedures (ALM GL ch. 150E, § 8). The CERB has certified the Union as the exclusive bargaining representative for the employee unit which includes Plaintiff. The CERB has an office located at 19 Staniford Street, 1st Floor, Boston, Massachusetts 02114.

## Jurisdiction and Venue

12.     This case raises claims under the First and Fourteenth Amendments of the U.S. Constitution and 42 U.S.C. § 1983. The Court has subject-matter jurisdiction under 28 U.S.C. § 1331 and 28 U.S.C. § 1343.

13.     Venue is proper because a substantial portion of the events giving rise to the claims occurred in the District of Massachusetts. 28 U.S.C. § 1391(b)(2).

**Facts**

**Background**

14. Plaintiff Richard Peltz-Steele is Chancellor Professor at the University of Massachusetts School of Law at Dartmouth, where he teaches torts and media-related topics. His research interests include civil and human rights and freedom of expression, which have instilled in him a strong sense of the importance of First Amendment values.

15. Plaintiff is a member of a bargaining unit represented by the Union.

16. Plaintiff is not a member of the Union.

17. In response to financial losses related to the COVID-19 pandemic, the University and the Union entered into a Memorandum of Understanding cutting employee salaries at UMass Dartmouth to make up the shortfall for the 2020-2021 school year.

18. On September 4, 2020, Union President Grant O'Rielly sent an email communication to represented employees outlining its negotiations with the University.

19. According to O'Rielly's email, the University initially asked only for a 5% across the board cut to employee pay. Without an agreement, the University would have to lay off some "80+ employees."

20. The Union rejected this proposal, instead demanding a "progressive" structure that would impose different cuts on different employees depending on their salary level. The University agreed to the Union proposal.

21. The Union and the University rejected or failed to consider a variety of other options, such as a reduction in redundant administrative staff, extended voluntary furloughs, intangible incentives such as faculty course releases, or tapping into the UMass System's $114 million dollar "rainy day fund," which exists for just such an emergency.

22. The MOU entered into between the University and the Union provides instead that salary reductions occur based on a formula, with no reduction for the first $30,000 of salary and then "[f]or each $5000 in excess of this threshold there shall be a salary reduction calculated as a percentage of the faculty or staff member's marginal salary. This percentage reduction shall start at 5% (0.05) and shall increase by 1 percentage point (0.01) for each step up to a maximum of 10% (0.10)."

23. As to Plaintiff, this formula results in a cut in income of about 12%, when including a law-school specific cut of $7,500 in research support that had already been imposed.

24. While Plaintiff is a senior faculty member with tenure, on information and belief the effects of these cuts on junior, less job secure faculty is even more severe. Plaintiff is personally aware of at least one junior colleague whose salary reduction put them below the level at which they were hired—and given the existing salary scale at the law school, all full time law faculty are worse off under the Union's plan than under the University's original proposal.

25. Due to the Commonwealth of Massachusetts system of exclusive representation, Plaintiff is prevented from negotiating separately with his employer, or even proposing an alternative solution to the University's financial situation.

26. Plaintiff has also been prevented from individually filing a grievance regarding the actions taken by his employer or the union. All grievances must be filed through the process laid out on the Union's Collective bargaining agreement.

27. On October 22, 2020, Plaintiff emailed the Dean of the Law School, asking "what is the procedure to present a grievance under Mass. Gen. L. ch. 150E, sec. 5, para. 2."[1]

28. On October 27, 2020, the Dean responded, informing Plaintiff that "[t]here isn't a separate system outside of the parties' CBA for filing a grievance. You would need to follow the same process described in the CBA, and the union would need to allow you to do so without their sponsorship."

29. Plaintiff is therefore prevented by state law and the collective bargaining agreement from representing his concerns with his employer.

**Defendants are imposing an exclusive representative on Plaintiff under color of state law.**

30. Acting under color of state law, the University and the Union entered into a collective bargaining agreement with a term of July 1, 2017 through June 30, 2020, recognizing the Union as Plaintiff's exclusive representative, and giving the Union exclusive power over grievance procedures. *See Agreement between the Board of Trustees of the University of Massachusetts and the American Federation of Teachers, Local 1895, AFL-CIO, Faculty Federation at the University of Massachusetts Dartmouth* (the "CBA") at 1, 189–193.[2]

31. ALM GL ch. 150E, § 4 provides that "the commission shall certify and the public employer shall recognize as the exclusive representative for the purpose of collective bargaining of all the employees in the bargaining unit an employee organization which has received a written majority authorization . . ."

---

[1] That paragraph provides: "An employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said employee, provided that the exclusive representative is afforded the opportunity to be present at such conferences and that any adjustment made shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative." ALM GL ch. 150E, § 5, para. 2.

[2] Available at: https://www.umassd.edu/media/umassdartmouth/faculty-federation/MASTER-Agreement-2017-2020-SIGNED.pdf

32. ALM GL ch. 150E, § 5 provides that "The exclusive representative shall have the right to act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership."

33. Section 5 further provides that "[a]n employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said employee, provided that the exclusive representative is afforded the opportunity to be present at such conferences and that any adjustment made shall not be inconsistent with the terms of an agreement then in effect between the employer and the exclusive representative."

34. ALM GL ch. 150E, § 8 provides that the University and the Union "may include in any written agreement a grievance procedure" that "shall . . . be the exclusive procedure for resolving any such grievance involving suspension, dismissal, removal or termination . . . [and] as a means of resolving grievances concerning job abolition, demotion, promotion, layoff, recall, or appointment and where an employee elects such binding arbitration as the method of resolution under said collective bargaining agreement."

35. Once a union is designated the exclusive representative of all employees in a bargaining unit, it negotiates wages, hours, and terms and conditions of employment for all employees, even employees who are not members of the union or who do not agree with the positions the union takes on those subjects.

36. Defendant Union is the exclusive representative of Plaintiff in the bargaining unit, with respect to wages, hours, and terms and conditions of employment, pursuant to ALM GL ch. 150E, § 6. *See* CBA at 1.

37. Article XVII of the CBA lays out grievance procedures, and provides that "[t]he Faculty Federation shall represent every member of the bargaining unit at various levels of the grievance procedures."

38. In certifying the Union as the exclusive representative of Plaintiff, the CERB Defendants acted under color of state law.

39. In recognizing the Union as the exclusive representative of Plaintiff, the University acted under color of state law.

40. As a joint participant in that arrangement, the Union also acted under color of state law. *See Janus v. AFSCME Council 31,* 942 F.3d 352, 361 (7th Cir. 2019).

## COUNT I

### State law forces Plaintiff to associate with Defendant Union in violation of his First Amendment rights to free speech and freedom of association.

41. The allegations contained in all preceding paragraphs are incorporated herein by reference.

42. "Compelling individuals to mouth support for views they find objectionable violates that cardinal constitutional command, and in most contexts, any such effort would be universally condemned." *Janus,* 138 S. Ct. at 2463.

43. The Supreme Court has repeatedly affirmed that "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning, and for this reason . . . a law commanding 'involuntary affirmation' of objected-to beliefs would require 'even more immediate and urgent grounds' than a law demanding silence." *Janus,* 138 S. Ct. at 2464 (2018) (quoting *West Virginia Bd. of Ed. v. Barnette,* 319 U.S. 624, 633 (1943)).

8

44. Therefore, courts should scrutinize compelled associations strictly, because "mandatory associations are permissible only when they serve a compelling state interest that cannot be achieved through means significantly less restrictive of associational freedoms." *Knox v. SEIU,* 567 U.S. 298, 310 (2012).

45. In the context of public sector unions, the Supreme Court has recognized that "[d]esignating a union as the employees' exclusive representative substantially restricts the rights of individual employees. Among other things, this designation means that individual employees may not be represented by any agent other than the designated union; nor may individual employees negotiate directly with their employer." *Janus,* 138 S. Ct. at 2460.

46. Under ALM GL ch. 150E, § 5, the Commonwealth of Massachusetts allows only one union representative to collectively bargain with a government employer for each employee bargaining unit.

47. The Union acts as a representative "of all the employees" in a given bargaining unit, ALM GL ch. 150E, § 4, exercising Plaintiff's individual rights of speech and association without his consent.

48. Acting as his representative, the Union unilaterally volunteered Plaintiff for a more significant salary reduction that he would otherwise have been subject to.

49. The CERB Defendants have certified the Union as Plaintiff's exclusive representative for collective bargaining purposes, and the University has accepted this certification.

50. Under color of state law, the Union has acted as Plaintiff's exclusive representative in negotiating the terms and conditions of his employment.

51. Under color of state law, the University has negotiated the terms and conditions of Plaintiff's' employment with Defendant Union.

52. This designation compels Plaintiff to associate with the Union and through its representation of him compels him to petition the government with a certain viewpoint, despite that viewpoint being in opposition to Plaintiff's own goals and priorities.

53. The exclusive representation provisions of ALM GL ch. 150E, §§ 4, 5, and 6 are, therefore, unconstitutional abridgements of Plaintiff's right under the First Amendment not to be compelled to associate with speakers and organizations without his consent.

54. Plaintiff has no adequate remedy at law.

## COUNT II
**State law and CBA prevents Plaintiff from presenting grievances to his employer without the permission of the Union, in violation of his First Amendment right**

55. The allegations in all preceding paragraphs are incorporated herein by reference.

56. The First Amendment protects the "freedom of speech," as well as "the right . . . to petition the Government for a redress of grievances." U.S. const. amend I.

57. Massachusetts' policy, as implemented by the University in its agreement with the Union, "substantially restricts the rights of individual employees" by requiring that "individual employees may not be represented by any agent other than the designated union," *Janus,* 138 S. Ct. at 2460, in presenting grievances to their employer, the University.

58. This represents a substantial restriction of Plaintiff's ability to speak on matters which are both of personal concern to him, as well as of public concern, since they involve the finances and administration of a public institution.

59. The challenged policy forces Plaintiff to speak only through a representative, which has demonstrably conflicting views, and is therefore an inappropriate substitute for Plaintiff's speech.

60. The Union acts as a representative "of all the employees" in a given bargaining unit, ALM GL ch. 150E, § 4, representing Plaintiff individually in all proceedings and preventing him from representing his own views and protecting his own interest.

61. Under color of state law, the University has entered into an agreement with the Union that prevents Plaintiff from presenting his own grievances to his employer.

62. Under color of state law, the Union has entered into an agreement by which only it can speak on behalf of Plaintiff regarding his grievances.

63. The grievance provisions of ALM GL ch. 150E, §§ 5, and 8 are, therefore, unconstitutional abridgements of Plaintiff's right under the First

Amendment to speak on his own behalf, and not to associate or designate representatives to speak for him.

## PRAYER FOR RELIEF

Plaintiff respectfully requests that this Court:

a. Enter a judgment declaring that the exclusive representation provided for in ALM GL ch. 150E, §§ 4, 5, and 6 is unconstitutional;

b. Enjoin Defendant Attorney General Maura Healey from enforcing the exclusive representation provisions of ALM GL ch. 150E, §§ 4, 5, and 6;

c. Enjoin Defendants Marjorie Wittner, Kelly Strong, and Joan Ackerstein, in their capacity as members of the CERB, from certifying a union as the exclusive representative in a bargaining unit;

d. Enjoin Defendant Martin Meehan from recognizing the Union as an exclusive representative.

e. Enjoin Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO, from acting as the exclusive representative of employees who are not members of the Union.

f. Enjoin Defendant Martin Meehan from forcing Plaintiff to present all grievances through the Union.

g. Enjoin Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO, from representing employees in grievance proceedings unless those employees consent to union representation.

     h.    Award Plaintiff his costs and attorneys' fees under 42 U.S.C. § 1988;

and

     i.    Award any further relief to which Plaintiff may be entitled.

Dated: September 24, 2021

                      Respectfully Submitted,

                      **Richard Peltz-Steele**

                      By:    <u>/s/ Matthew L. Fabisch</u>

| | |
|---|---|
| Matthew L. Fabisch | Jeffrey M. Schwab |
| (BBO No. 673821) | (IL Bar No. 6290710)* |
| Fabisch Law | Reilly Stephens |
| 664 Pearl St. | (MD Bar, admitted December 2017)* |
| Brockton, MA 02301 | Liberty Justice Center |
| Telephone (401) 324-9344 | 141 West Jackson Street, Suite 1065 |
| Facsimile (401) 354-7883 | Chicago, Illinois 60604 |
| mlfabisch@yahoo.com | Telephone (312) 637-2280 |
| | Facsimile (312) 263-7702 |
| | jschwab@libertyjusticecenter.org |
| | rstephens@libertyjusticecenter.org |
| *Attorneys for Plaintiff* | *Pro Hac Vice motions to be filed. |

13