IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| **Richard J. Peltz-Steele**, <br><br> Plaintiff, <br><br> v. <br><br> **UMass Faculty Federation, Local 1895 American Federation of Teachers, AFL-CIO, et al.,** <br><br> Defendants. | Case No. 1:21-cv-11590-WGY <br><br> Judge William G. Young |

## MEMORANDUM OF LAW IN SUPPORT OF DEFENDANT UMASS FACULTY FEDERATION'S MOTION TO DISMISS THE COMPLAINT

Jacob Karabell (DC #996066)
(*admitted pro hac vice*)
BREDHOFF & KAISER, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC  20005
(202) 842-2600
jkarabell@bredhoff.com

Jenniffer P. Migliaccio (#682196)
AMERICAN FEDERATION OF
TEACHERS MASSACHUSETTS
38 Chauncy Street, Suite 402
Boston, MA 02111
(617) 423-3342
jmigliaccio@aftma.net

*Counsel for Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO*

## INTRODUCTION

The complaint in this action takes aim at the core principle of the American system of labor relations in both the public and private sectors. That principle, known as exclusive representation, is that if a labor organization is democratically selected by the majority of employees in a bargaining unit, that labor organization represents the entire bargaining unit for purposes of negotiating terms and conditions of employment and enforcing the agreed-upon terms. Nearly a century ago, Congress established the principle of exclusive representation for private-sector employees in recognition of the fact that, because it was "practically impossible to apply two or more sets of agreements to one unit of workers at the same time, or to apply the terms of one agreement to only a portion of the workers in a single unit, the making of agreements is impracticable in the absence of majority rule." S. Rep. No. 74-573, *as reprinted in* 2 Leg. Hist. of the NLRA 2313 (1935). The same system of exclusive representation was subsequently adopted in the public sector by the federal government, *see* 5 U.S.C. § 7111(a); by the Commonwealth of Massachusetts, *see* Mass. Gen. Laws ch. 150E, § 5; and by the other 40 states that allow collective bargaining by at least some of their public employees.[1]

Given that the centrality of exclusive representation to the American system of labor relations dates to the Great Depression, it should come as no surprise that the constitutionality of such labor-law regimes is well-settled. Indeed, the Supreme Court held in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), that exclusive representation does *not* violate the speech or associational rights of individuals who may disagree with their union's positions on bargaining or other policy matters. *See Reisman v. Associated Facs. of the Univ. of Me.*, 939 F.3d 409, 414 (1st Cir. 2019) (applying *Knight* to reject constitutional challenge to exclusive representation); *D'Agostino v. Baker*, 812 F.3d 240, 243-44 (1st Cir.

---

[1] *See* Amicus Br. for New York *et al.* at *8 n.3 & Appendix, *Harris v. Quinn*, 134 S. Ct. 2618 (2013), 2013 WL 6907713 (citing statutory authorizations of exclusive representation).

1

2016) (same). *Knight* controls here and requires the dismissal of Plaintiff's claim that exclusive representation violates his First Amendment rights.

*Knight* also disposes of Plaintiff's subsidiary claim that his First Amendment rights were violated because he was prevented from filing a formal grievance to express his disagreements with the terms of a collective bargaining agreement negotiated between Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO ("Faculty Federation" or the "Union") and his employer, the University of Massachusetts Dartmouth ("UMass Dartmouth" or "University"). As a threshold matter, Plaintiff's claim is based on an erroneous premise. Contrary to Plaintiff's assertions, both state law and the applicable collective bargaining agreement expressly *allow* individual bargaining-unit members like Plaintiff to file a formal grievance with the University without the Union's permission. But even if his premise were correct, it would not make out a constitutional claim, as the First Amendment does not require the government to listen to individual public employees' views in a formal setting. As the *Knight* Court explained in rejecting a similar claim, "[a] person's right to speak is not infringed when government simply ignores that person while listening to others." 465 U.S. at 288.

The Court accordingly should dismiss Plaintiff's complaint.

## BACKGROUND

At issue in this case are provisions of the Massachusetts Public Sector Collective Bargaining Statute, Mass. Gen. Laws ch. 150E *et seq.* ("the Act"). Enacted in 1973, the Act extended collective-bargaining rights to most state and municipal employees in the Commonwealth, including employees of the University of Massachusetts. The Act provides generally that the members of a bargaining unit of public employees may choose, by majority action, to be represented by a union for purposes of collective bargaining with their public

2

employer "on questions of wages, hours, and other terms and conditions of employment." Mass. Gen. Laws ch. 150E, § 2. Such a union is "designated . . . as the exclusive representative of all the employees in such unit for the purpose of collective bargaining," *id.* § 4, and thus "shall have the right to act for and negotiate agreements covering all employees in the unit," *id.* § 5. A union so certified "shall be responsible for representing the interests of all such employees without discrimination and without regard to employee organization membership." *Id.* The Act also guarantees that "[a]n employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said employee," provided that the union can attend relevant meetings. *Id.*

The Faculty Federation has been certified as the exclusive bargaining representative of a unit of professional employees, including faculty, at UMass Dartmouth. Ex. A, CBA Art. I, § A; Compl. ¶ 11.[2] Under the collective bargaining agreement ("CBA") between the Faculty Federation and the University, any member of the bargaining unit can file a formal grievance with the University contending that "there has been as to the individual a violation, misinterpretation or inequitable application of any of the provisions of this Agreement." Ex. A, CBA Art. XVII, § B. To do so, a bargaining-unit member must complete a grievance form and deliver it "to the administrator being grieved and to the Faculty Federation Grievance Hearing Committee." Ex. A, CBA Art. XVII, § C.2. In accordance with the Act, a bargaining-unit member can choose to handle his or her grievance "without representation by

---

[2] As Plaintiff's complaint links to and cites the collective bargaining agreement between the Faculty Federation and UMass Dartmouth, *see* Compl. ¶¶ 30, 37 & 30 n.2, the agreement is incorporated into the complaint by reference and can be cited in support of this Rule 12(b)(6) motion to dismiss. *See Squeri v. Mt. Ida Coll.*, 954 F.3d 56, 66 (1st Cir. 2020) (court may consider documents "specifically referenced" in complaint on motion to dismiss). We have attached the CBA as Exhibit A to this brief for the Court's convenience.

3

the Federation." *Id.*

In September 2020, a coalition of unions that represent certain bargaining units of UMass Dartmouth employees, including the Faculty Federation, entered into collective negotiations with the University to address a financial shortfall resulting from the COVID-19 pandemic. Compl. ¶ 17; *see* Ex. B, Mem. of Agreement (prefatory clauses).[3] Those negotiations culminated with an agreement in which the University agreed that no bargaining-unit employee would be laid off until at least July 1, 2021. Ex. B, Mem. of Agreement ¶ 13. In exchange, the unions agreed to a formula for progressive salary reductions during this same time period, whereby there would be no reduction of the first $30,000 of each employee's regular salary but there would be increasing salary reductions for each $5,000 in salary exceeding this threshold. Compl. ¶ 22; Ex. B, Mem. of Agreement ¶¶ 4-5.

Plaintiff Richard Peltz-Steele, a law professor at UMass Dartmouth, is a member of the bargaining unit represented by the Faculty Federation, though he is not a dues-paying member of the Union. Compl. ¶¶ 15-16. Plaintiff alleges that he was dissatisfied with the terms of the aforementioned COVID-19 agreement negotiated between the Faculty Federation and the University, and that he would have preferred an agreement that did not contain progressive salary reductions. *Id.* ¶¶ 21-24 (suggesting, *inter alia*, that the agreement should have included "a reduction in redundant administrative staff"). Plaintiff also alleges that he emailed the Dean of the Law School on October 22, 2020 to ask how to present a grievance concerning the COVID-19 agreement; in response, the Dean allegedly told Plaintiff that he "would need to follow the same process described in the CBA" and that "the

---

[3] This agreement is also incorporated into Plaintiff's complaint by reference. *See* Compl. ¶ 22 (quoting agreement). It is attached as Exhibit B.

4

union would need to allow you to do so without their sponsorship." *Id.* ¶ 28. Plaintiff does not allege that he attempted to follow the grievance procedures set forth in Article XVII of the CBA by completing a grievance form and delivering it to the applicable University administrator and Hearing Committee.

On September 28, 2021, Plaintiff filed a complaint under 42 U.S.C. § 1983 against the Faculty Federation, the President of the University of Massachusetts, and certain state officials. Count I of the complaint contends that the system of exclusive representation under Massachusetts law violates the First Amendment because it "compels Plaintiff to associate with the Union" and "compels him to petition the government with a certain viewpoint." Compl. ¶ 52; *see also* Prayer for Relief (a)-(e). Count II of the complaint contends that Plaintiff cannot "present[ ] grievances to [his] employer" under the Act and/or the CBA, which, according to Plaintiff, also violates his First Amendment rights. *Id.* ¶¶ 57, 63; *see also* Prayer for Relief (f)-(g).

## STANDARD OF REVIEW

For purposes of a motion to dismiss under Rule 12(b)(6), this Court must accept all well-pleaded facts pleaded in the complaint as true, including documents incorporated into the complaint by reference. *Lyman v. Baker*, 954 F.3d 351, 355 (1st Cir. 2020).

## ARGUMENT

**I. Plaintiff's Challenge to Exclusive Representation (Count I) Is Foreclosed by Binding Precedent.**

This case is not the first attempt to strike down the principle of exclusive representation, which is the foundational principle of American labor law in the public and private sectors. In just the last few years, there have been numerous lawsuits filed throughout the country premised on the same theory as Count I of Plaintiff's complaint: that exclusive representation compels nonmembers of a bargaining unit to speak and/or associate with a union in violation of their

5

First Amendment rights. The outcome of each of those lawsuits has been the same, with the courts holding that the plaintiffs' claims are foreclosed by the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). This unbroken consensus includes panels from nine different federal courts of appeals as well as the Massachusetts Supreme Judicial Court, with the U.S. Supreme Court denying ten petitions for certiorari in the past five years requesting that the Court reconsider the constitutionality of exclusive representation. *See D'Agostino v. Baker*, 812 F.3d 240 (1st Cir.), *cert. denied*, 136 S. Ct. 2473 (2016); *Reisman v. Associated Facs. of the Univ. of Me.*, 939 F.3d 409 (1st Cir. 2019), *cert. denied*, 141 S. Ct. 445 (2020); *Jarvis v. Cuomo*, 660 F. App'x 72, 75-76 (2d Cir. 2016) (non-precedential), *cert. denied*, 137 S. Ct. 1204 (2017); *Adams v. Teamsters Union Local 429*, 2022 WL 186045, at *2 (3d Cir. Jan. 20, 2022) (non-precedential); *Akers v. Md. State Educ. Ass'n*, 990 F.3d 375, 382 n.3 (4th Cir. 2021); *Thompson v. Marietta Educ. Ass'n*, 972 F.3d 809 (6th Cir. 2020), *cert. denied*, 141 S. Ct. 2721 (2021); *Hill v. SEIU*, 850 F.3d 861 (7th Cir.), *cert. denied*, 138 S. Ct. 446 (2017); *Ocol v. Chi. Tchrs. Union*, 982 F.3d 529, 532-33 (7th Cir. 2020); *cert. denied*, 142 S. Ct. 423 (2021); *Bennett v. Council 31 of AFSCME*, 991 F.3d 724, 732-35 (7th Cir. 2021); *Bierman v. Dayton*, 900 F.3d 570 (8th Cir. 2018), *cert. denied sub nom. Bierman v. Walz*, 139 S. Ct. 2043 (2019); *Mentele v. Inslee*, 916 F.3d 783 (9th Cir.), *cert. denied sub nom. Miller v. Inslee*, 140 S. Ct. 114 (2019); *Hendrickson v. AFSCME Council 18*, 992 F.3d 950, 968-70 (10th Cir. 2021); *Branch v. Commonwealth Emp. Rels. Bd.*, 481 Mass. 810, 819-26 (Mass. 2019), *cert. denied*, 140 S. Ct. 858 (2020).

In this Circuit, *D'Agostino* is the controlling post-*Knight* decision rejecting a First Amendment challenge to exclusive representation. *D'Agostino* was brought by a group of Massachusetts child-care providers who were represented by a union pursuant to the

6

exclusive-representation provisions of the Act.[4] While the *D'Agostino* plaintiffs, like Plaintiff Peltz-Steele here, had not joined the union and were not required to provide any financial support to the union, they nonetheless "challeng[ed] the statutory scheme that authorizes the selection of an exclusive bargaining agent"—with the plaintiffs claiming that these provisions of the Act "violat[ed] their rights of freedom of association and other expressive rights guaranteed by the First Amendment." 812 F.3d at 242.

Affirming the district court's dismissal of the complaint, the First Circuit relied principally on *Knight*. *Knight* involved a First Amendment challenge to legislation providing that if a majority of college faculty selected a union to represent them, the university could meet only with that union to discuss both collective-bargaining topics and other "policy questions" outside the scope of mandatory collective bargaining. *Knight*, 465 U.S. at 273. The *D'Agostino* court explained that in *Knight*

> [t]he Court held that neither a right to speak nor a right to associate was infringed [by exclusive representation]; like the appellants here, the academic employees in *Knight* could speak out publicly on any subject and were free to associate themselves together outside the union however they might desire. Their academic role was held to give them no variance from the general rules that there is no right to compel state officials to listen to them, and no right to eliminate the amplification that an exclusive agent necessarily enjoys in speaking for the unionized majority.

*D'Agostino*, 812 F.3d at 243 (citations omitted). The *D'Agostino* court went on to specifically reject the plaintiffs' argument that exclusive representation results in a compelled association in violation of the First Amendment, *id.* at 244, as well as the argument that a union's speech *qua* exclusive representative is "imputable to a non-union dissenter" and thus compelled speech in violation of the First Amendment, *id.* In rejecting the latter argument, the court explained that "when an exclusive bargaining agent is selected by majority choice, it is

---

[4] Under Massachusetts law, child-care providers are "considered public employees . . . solely for the purposes of . . . chapter 150E." Mass. Gen. Laws ch. 15D, § 17(b).

7

readily understood that employees in the minority, union or not, will probably disagree with some positions taken by the agent answerable to the majority." *Id.* at 244. It added that "[t]he freedom of the dissenting appellants to speak out publicly on any union position further counters the claim that there is an unacceptable risk the union speech will be attributed to them contrary to their own views." *Id.*

*D'Agostino* cannot be distinguished from this case. Plaintiff Peltz-Steele bases Count I of his complaint on his contention that the Faculty Federation's status as exclusive representative impermissibly "compels Plaintiff to associate with the Union" and "compels him to petition the government with a certain viewpoint." Compl. ¶ 52; *see also id.* ¶ 4. As noted, both of these contentions were expressly rejected by the First Circuit in *D'Agostino*, which challenged the same statutory provisions that Plaintiff challenges here. *Accord Branch*, 481 Mass. at 819-26 & n.22 (agreeing with *D'Agostino* that exclusive-representation provisions of Mass. Gen. Laws 150E do not violate First Amendment). Plaintiff's First Amendment challenge to exclusive representation therefore fails.

To the extent Plaintiffs may argue that *Knight* and *D'Agostino* are no longer good law following the Supreme Court's decision in *Janus v. AFSCME Council 31*, 138 S. Ct. 2448 (2018), which held that public employees cannot be required to financially support a labor union, Circuit precedent forecloses this argument as well. In *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409 (1st Cir. 2019), a university professor argued that Maine's system of exclusive representation for public employees violates the First Amendment. After holding that *D'Agostino* foreclosed the plaintiff's compelled-association and compelled-speech claims, *id.* at 413-14, the Court cast aside the plaintiff's argument that *D'Agostino* was superseded by *Janus*. *Reisman*, 939 F.3d at 414 ("[A]s *Janus* focuses on the unconstitutionality of a statute that requires a bargaining unit member to pay

8

an agency fee to her unit's exclusive bargaining agent, we cannot say that precedent provides us with a basis for disregarding *D'Agostino*." (citation omitted)). The First Circuit's analysis is in accord with every court to address a post-*Janus* challenge to exclusive representation, each of which has held that *Knight* remains good law. *See, e.g.*, *Hendrickson*, 992 F.3d at 969 ("*Janus* reinforces [*Knight*]" because "the [*Janus*] Court stated that, with the exception of agency fees, '[s]tates can keep their labor-relations systems exactly as they are'" (quoting *Janus*, 138 S. Ct. at 2485 n.27) (final alteration in original)); *Bennett*, 991 F.3d at 735 ("*Janus* did not mention, let alone overrule, *Knight* or otherwise question the constitutionality of a system of labor relations based on exclusive representation").

Under *Knight*, *D'Agostino*, and *Reisman* therefore, Count I of Plaintiff's complaint fails to state a claim upon which relief may be granted.

**II.     Plaintiff's Challenge to the Grievance Procedure (Count II) Is Based on an Erroneous Premise and, in All Events, Is Foreclosed by Binding Precedent.**

Count II of Plaintiff's complaint contends that "[s]tate law and CBA prevents Plaintiff from presenting grievances to his employer without the permission of the Union, in violation of his First Amendment right." Compl. at 10 (header). This count can and should be dismissed on the ground that *neither* state law nor the CBA in fact "prevent[ ] Plaintiff from presenting grievances to his employer without the permission of the Union." On the contrary, *both* state law and the CBA expressly give Plaintiff the right to present formal grievances to his employer without the Union's permission.

Specifically, the state law at issue, Mass. Gen. Laws. ch. 150E, § 5, provides that "[a]n employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said employee." And the CBA between the Faculty Federation and UMass Dartmouth faithfully

9

implements this statutory requirement by permitting "any member of the bargaining unit [to] present any grievance without representation by the Federation." Ex. A, CBA Art. XVII, § C.2. Plaintiff's allegation that he was barred from presenting a formal grievance must bow to the incontrovertible provisions of the Act and the CBA, regardless of whether the Dean of UMass Dartmouth Law School incorrectly described the terms of the CBA to Plaintiff in an email. *See* Compl. ¶¶ 27-28. Indeed, it is telling that Plaintiff does not allege that he even attempted to follow the CBA's grievance procedures before he filed this lawsuit.

Even if Plaintiff's premise were correct that only the Union could file a formal grievance under the CBA, however, that still would not state a First Amendment claim. That would be the case for two reasons.

First, Plaintiff's contentions that the Faculty Federation "represent[s] Plaintiff individually" and "speak[s] on behalf of Plaintiff" when it presents a formal grievance to UMass Dartmouth, Compl. ¶¶ 60, 62, fail as a matter of law under *D'Agostino* and *Reisman*. In both cases, the First Circuit held that the speech of an exclusive-representative union is *not* attributable to each individual member of the bargaining unit. *D'Agostino*, 812 F.3d at 244; *Reisman*, 939 F.3d at 413-14. As the *Reisman* court explained in interpreting Maine's exclusive-representation statute—which is identical to Massachusetts' exclusive-representation statute in all material respects—the statute "is not properly read to designate [the union] as Reisman's personal representative . . . . Rather, [it] merely makes clear that a union . . . must represent the *unit* as an entity." 939 F.3d at 413.

Moreover, to the extent Plaintiff contends that the First Amendment requires that UMass Dartmouth permit him to "negotiat[e] separately with his employer" and to "individually fil[e] a grievance regarding the actions taken by his employer or the union," Compl. ¶¶ 25-26, the

10

Supreme Court in *Knight* considered these same theories[5]—and rejected them in no uncertain terms. As the Court explained, "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." 465 U.S. at 285; *see also Smith v. Ark. State Highway Emps., Local 1315*, 441 U.S. 463, 465 (1979) (same). The fact that the *Knight* plaintiffs were public employees, the Court added, did not obligate the government to listen to their views in a formal setting. 465 U.S. at 286-87. Nor did the fact that the plaintiffs were faculty members at an academic institution. *Id.* at 287-88.

As Plaintiff is identically situated to the plaintiffs in *Knight*, it would not violate his speech or associational rights if—contrary to fact—UMass Dartmouth only permitted a union certified as an exclusive representative to file formal grievances.

## CONCLUSION

For the foregoing reasons, Plaintiff's complaint should be dismissed for failure to state a claim.

Respectfully submitted,

/s/ Jacob Karabell
Jacob Karabell (DC #996066)
(*admitted pro hac vice*)
BREDHOFF & KAISER, P.L.L.C.
805 15th Street N.W., Suite 1000
Washington, DC  20005
(202) 842-2600
jkarabell@bredhoff.com

/s/ Jenniffer P. Migliaccio
Jenniffer P. Migliaccio (#682196)
AMERICAN FEDERATION OF
TEACHERS MASSACHUSETTS
38 Chauncy St, Suite 402
Boston, MA 02111
(617) 423-3342
jmigliaccio@aftma.net

*Counsel for Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO*

---

[5] *See* 465 U.S. at 283 ("appellees' principal claim is that they have a right to force officers of the state acting in an official policymaking capacity to listen to them in a particular formal setting").

**CERTIFICATE OF SERVICE**

I hereby certify that the foregoing Memorandum of Law in Support of Defendant Faculty Federation's Motion To Dismiss the Complaint was filed this 21st day of January 2022, using the Court's CM/ECF system, which will provide notice of the filing to all counsel.

<u>/s/ Jacob Karabell</u>
Jacob Karabell