IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD J. PELTZ-STEELE,<br><br>    Plaintiff,<br><br>v.<br><br>UMASS FACULTY FEDERATION, LOCAL 1895, AMERICAN FEDERATION OF TEACHERS, AFL-CIO; ET AL.,<br><br>    Defendants. | No. 1:21-cv-11590-WGY<br><br>Judge William G. Young |

**Response in Opposition to Defendant UMass
Faculty Federation's Motion to Dismiss the Complaint**

As a condition of his employment, Plaintiff Richard Peltz-Steele, a law professor at the University of Massachusetts School of Law at Dartmouth ("the University"), is compelled by Commonwealth of Massachusetts law to accept Defendant UMass Faculty Federation, Local 1895, American Federation of Teachers, AFL-CIO ("the Union"), as his exclusive bargaining representative for all terms and conditions of his employment, even though Professor Peltz-Steele is not a member of the Union.

The Supreme Court, in recent years has on at least three occasions recognized that schemes compelling public-sector employees to associate with labor unions impose a "significant impingement" on those employees' First Amendment rights. *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310–11 (2012); *Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014); *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2483 (2018). Most recently, in *Janus*, the Court recognized that a state's appointment of a labor union to speak for its employees as their exclusive representative constitutes "a significant

1

impingement on associational freedoms that would not be tolerated in other contexts." 138 S. Ct. at 2478. These "exclusive bargaining" schemes cannot be squared with the Supreme Court's First Amendment jurisprudence. The First Amendment protects "[t]he right to eschew association for expressive purposes," *Janus v. AFSCME, Council 31*, 138 S. Ct. at 2463 (2018), and "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984).

The Union relies on the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), which the Union claims stands for the proposition that exclusive bargaining schemes are constitutional. But *Knight* did not consider a compelled-speech or compelled-association challenge to exclusive bargaining schemes, as this case does. Rather, the claim in *Knight* was that public workers had a right to be heard by the state in certain "meet and confer" sessions with union representatives. That is not what Plaintiff alleges in this case. The Union also relies on the First Circuit's decisions in *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409, 414 (1st Cir. 2019) and *D'Agostino v. Baker*, 812 F.3d 240, 243-44 (1st Cir. 2016). But, as the Union recognizes, both of those cases rely on *Knight*, which does not address the same claim as Plaintiff brings here. Further, *Reisman* rejected the claim of the plaintiff in that case on a specific interpretation of the Maine statute, which is distinct from the law of the Commonwealth of Massachusetts at issue in this case.

This compelled association is not limited to contract negotiations. The CBA purports to require the Union's participation in any grievance procedures between Professor Peltz-Steele and his employer, the University. This grievance scheme stifles Plaintiff's speech, abridging his ability to express his views on matters of both personal and public concern. The Union asserts that the law and the bargaining agreement do not prevent Professor Peltz-Steele from filing a grievance with his employer without the Union, but the bargaining agreement is self-contradictory and Professor Peltz-Steele was prevented from doing so by the Dean of the Law School, who claimed otherwise. In any event, to the extent that all Defendants concede in writing that Plaintiff is free to pursue a grievance without Union representation, Plaintiff is willing to voluntarily dismiss Count II.

**I.   Forcing Plaintiff to associate with the Union as his exclusive representative violates his First Amendment right to free speech and freedom of association.**

Under Massachusetts Public Sector Collective Bargaining Statute, Mass. Gen. Laws ch. 150E et seq., as a condition of his employment, Plaintiff must allow the Union to "act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees." ALM GL ch. 150E, § 5. These "interests" are precisely the sort of policy decisions that *Janus* recognized are necessarily matters of public concern. 138 S. Ct. at 2467.

When the Commonwealth certifies the Union to represent the bargaining unit, it forces all employees in that unit to associate with the Union. This coerced association authorizes the Union to speak on behalf of the employees even if the employees are not members, even if the employees do not contribute fees, even if the employees

disagree with the Union's positions and speech.

This arrangement has two constitutional problems: it is both compelled speech (the Union speaks on behalf of the employees, as though its speech is the employees' own speech) and compelled association (the Union represents everyone in the bargaining unit without any choice or alternative for dissenting employees not to associate).

Legally compelling Plaintiff to associate with the Union demeans his First Amendment rights. While it has not had occasion to directly address this issue, the Supreme Court has repeatedly questioned whether exclusive representation in the public-sector context imposes a "significant impingement" on public employees' First Amendment rights. *Janus*, 138 S. Ct. at 2483; *see Harris v. Quinn*, 134 S. Ct. 2618, 2640 (2014); *Knox v. Service Employees*, 567 U. S. 298, 310–11 (2012). Indeed, "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning. . . . [A] law commanding involuntary affirmation of objected-to beliefs would require even more immediate and urgent grounds than a law demanding silence." *Janus*, 138 S. Ct. at 2464 (2018) (quoting *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 633 (1943) (internal quotation marks omitted)). Exclusive representation forces the employees "to voice ideas with which they disagree, [which] undermines" First Amendment values. *Janus*, 138 S. Ct. at 2464. Massachusetts law commands Plaintiff's involuntary affirmation of objected-to beliefs. The fact that he retains the right to speak for himself in certain circumstances does not resolve the fact that the Union organizes and negotiates as his

4

representative in his employment relations.

Exclusive representation is also forced association: Plaintiff is forced to associate with the Union as his exclusive representative simply by the fact of his employment in this particular bargaining unit. "Freedom of association . . . plainly presupposes a freedom not to associate." *Roberts*, 468 U.S. at 623. Yet Plaintiff has no such freedom, no choice about his association with the Union; it is imposed—indeed coerced—by the Commonwealth's laws.

### A. The Union's reliance on *Knight* as precedent preventing Plaintiff's claim is misplaced.

The Union claims that this case is foreclosed by the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). *See* Union Memo at 6. But *Knight* is not dispositive of Plaintiff's claim. In *Knight*, the Supreme Court held that employees do not have a right, as members of the public, to a formal audience with the government to air their views. *Knight* did not decide whether such employees can be forced to associate with the union; therefore, the case is inapposite. As the *Knight* court framed the issue, "The question presented . . . is whether this restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees." 465 U.S. at 273.

The plaintiffs in *Knight* were community college faculty who dissented from the certified union. *Id*. at 278. The Minnesota statute at issue required that their employer "meet and confer" with the union alone regarding "non-mandatory subjects" of bargaining. The statute explicitly prohibited negotiating separately with dissenting employees. *Id*. at 276. The plaintiffs filed their suit claiming a

5

constitutional right to take part in these negotiations.

The Court explained the issue it was addressing: "[A]ppellees' principal claim is that they have a right to force officers of the State acting in an official policymaking capacity to listen to them in a particular formal setting." *Id.* at 282. Confronted with this claim, the Court held that "[a]ppellees have no constitutional right to force the government to listen to their views. They have no such right as members of the public, as government employees, or as instructors in an institution of higher education." *Id.* at 283.

The First Amendment guarantees citizens a right to speak. It does not deny government, or anyone else, the right to ignore such speech. Unlike the plaintiffs in *Knight*, Plaintiff here does not claim that his employer—or anyone else—should be compelled to listen to his views. Instead, he asserts a right against the compelled association forced on him by exclusive representation.

The central issue of the *Knight* decision is whether plaintiffs could compel the government to negotiate with them instead of, or in addition to, the union. That question is fundamentally different from Plaintiff's claim that the government cannot compel him to associate with the Union by authorizing the Union to bargain on his behalf.

*Knight* is, therefore, not responsive to the question Plaintiff now raises: whether someone else can speak in his name, with his imprimatur granted to it by the government. He does not contest the right of the government to choose whom it meets with, to "choose its advisors," or to amplify the Union's voice. He does not demand

6

that the government schedule meetings with him, engage in negotiation, or any of the other demands made in *Knight*. He only asks that the Union not do so in his name.

Contrary to the Union's assertion, *Knight* does not compel this Court to dismiss Count I.

### B. The Union's reliance on First Circuit precedent it asserts prevent Plaintiff's claim is misplaced.

As a proper reading of *Knight* clearly shows that *Knight* is inapposite to this case, the Union also relies on the First Circuit Court of Appeals decision in *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016). But the First Circuit in *D'Agostino* explicitly based its decision on *Knight*—which, as explained above is inapposite—and *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), *see* 812 F. 3d. at 243—which the Supreme Court explicitly overturned in *Janus*. In particular, the *D'Agostino* court stated: "*Abood's* understanding that non-union public employees have no cognizable associational rights objection to a union exclusive bargaining agent's agency shop agreement points emphatically to the same result here, where no financial support for any purpose is required from non-union employees." *D'Agostino*, 812 F.3d at 243. Yet, the exact logic in *Abood* that the *D'Agostino* court relied on in upholding the exclusive bargaining scheme in that case was explicitly rejected by the Supreme Court in *Janus*. *Abood*, the Court said, in allowing state schemes forcing nonmembers of a union to pay agency fees to a union, is inconsistent with the Court's other First Amendment cases. *Abood* failed to recognize the core First Amendment status of union speech in public-sector collective bargaining, which typically concerns matters

7

of intense public interest. *Janus*, 138 S. Ct. at 2475–76, 2480. *Abood* relied on a free-rider rationale insufficient to justify compelled speech and association in other contexts. *Id*. at 2466–68. And *Abood* accepted the state interest in "labor peace" as a basis to impinge First Amendment rights. *Id*. at 2465–66. The *D'Agostino* court's reliance on the Supreme Court's overturned logic in *Abood* cannot serve as binding precedent.

The Union asserts that to the extent that *Janus* overturns *D'Agostino*, this Court is still bound by the First Circuit post-*Janus* decision in *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409 (1st Cir. 2019); Union Memo at 8. But *Reisman* is inapposite for at least three reasons. First, the court in *Reisman* denied plaintiff's claim specifically on the statutory text of the Maine exclusive bargaining law. According to the court, Reisman claimed that the Maine law forced him to have the exclusive bargaining agent union represent him as his personal representative, however, the First Circuit found that the Maine statute repeatedly makes clear that a union that acts as an exclusive bargaining agent is the representative of a bargaining unit only and not the individual employees. *Id*. at 412. However, in this case, the Massachusetts statute does not clearly make this distinction. The Massachusetts statute states that the exclusive representative shall have the right to act for and negotiate agreements covering "all employees in the unit" and shall be responsible for representing "the interests of all such employees." ALM GL ch. 150E, § 5. In other words, while the *Reisman* court found it important that the Maine statute indicated that the exclusive bargaining agent represented only the

8

bargaining unit, not the individual employees, and the fact that the plaintiff did not make that distinction was fatal to its argument; that issue is not present in this case. The Massachusetts statute is differently worded and does not specifically limit the exclusive representative's agency to only the bargaining unit itself.

*Reisman* is inapposite for two additional reasons that are set forth in what appears to be dicta. The *Reisman* court said that even if the distinction between the bargaining unit and individuals was not important under Maine law, and even if plaintiff had properly pleaded such a claim, that *Knight* is controlling precedent. As explained above, the plaintiffs in *Knight* sought to have the government hear their lobbying; while in this case plaintiff claims that it violates his First Amendment rights to be forced to have the Union lobby the government on his behalf. The *Reisman* court completely misses this distinction.

In addition, the *Reisman* court states that *D'Agostino's* reliance on *Knight* is appropriate even in light of the Supreme Court's *Janus* decision. But while the *Reisman* court acknowledges that circuit precedent undermined by intervening Supreme Court precedent is not binding, 939 F.3d at 414, it ignores the fact, as explained above, that *D'Agostino* relied on a premise of *Abood*, which *Janus* overturned, and thus *D'Agostino* is undermined by *Janus*.

For these reasons, this Court should deny the Union's motion to dismiss.

**II.    The bargaining agreement prevents Plaintiff from presenting grievances to his employer without permission of the Union in violation of his First Amendment rights.**

As alleged in the Complaint, when Professor Peltz-Steele emailed the Dean of the Law School asking what the procedure was to file a grievance, the Dean responded,

informing Plaintiff that "[t]here isn't a separate system outside of the parties' CBA for filing a grievance. You would need to follow the same process described in the CBA, and the union would need to allow you to do so without their sponsorship." Compl. ¶ 28. In addition, the CBA provides that "[t]he Faculty Federation shall represent every member of the bargaining unit at various levels of the grievance procedures." Article XVII, § C.1.

Although, as the Union points out, Mass. Gen. Laws. ch. 150E, § 5, provides that "[a]n employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee organization representing said employee," Union Memo. 9, Mass. Gen. Laws ch. 150E, § 8 provides that the University and the Union "may include in any written agreement a grievance procedure" that "shall . . . be the exclusive procedure for resolving any such grievance." The Union also points out that the CBA also provides:

> If any member of the bargaining unit shall present any grievance without representation by the Federation, the disposition of the grievance shall be consistent with the provisions of this Agreement and shall not be deemed to change or otherwise modify the terms and conditions of the Agreement or create a precedent unless the Trustees and the Federation shall otherwise agree in writing. When members of the bargaining unit choose to handle their own grievance cases, they do so at their own peril.

CBA Art. XVII, C.2; *see* Union Memo. at 9–10.

At best, the provisions of the CBA contradict each other and contradict state law. Further, the Dean of the Law School understood and advised Plaintiff that he may not file a grievance without the Union representing him. If that was incorrect information as to what state law provides and incorrect information as to what the

10

CBA provides, it none-the-less is the answer Plaintiff was given prior to filing this case. Nonetheless, if Defendants all concede in writing that an employee in the bargaining unit can bring a grievance to their employer without being represented by the Union, then Plaintiff is willing to voluntarily dismiss Count II in reliance on that representation.

However, to the extent that any defendant asserts that Plaintiff must allow the Union to represent him in any grievance procedure, there is no basis to dismiss this claim.

The Union asserts that Plaintiff's contentions that the Faculty Federation "represent[s] Plaintiff individually" and "speak[s] on behalf of Plaintiff" when it presents a formal grievance to the University, fail as a matter of law under *D'Agostino* and *Reisman*. Union Memo. at 10. The Union claims that the *Reisman* court explained in interpreting Maine's exclusive-representation statute—which the Union claims is identical to Massachusetts' exclusive-representation statute in all material respects—the statute "is not properly read to designate [the union] as Reisman's personal representative . . . . Rather, [it] merely makes clear that a union . . . must represent the unit as an entity." 939 F.3d at 413; Union Memo. at 10. However, as explained above, the Massachusetts statute is not identical to the Maine statute: it does not specify that the union must represent the bargaining unit as an entity. Rather, the Massachusetts statute specifies that the exclusive representative shall have the right to act for and negotiate agreements covering "all employees in the unit" and shall be responsible for representing "the interests of all such employees." ALM

11

GL ch. 150E, § 5. In other words, contrary to the Union's assertion, the Massachusetts statute is not the same as the one contemplated in *Riesman* and therefore, there is no basis to force individual employees to have the Union represent them in grievance procedures.

Second, the Union asserts that *Knight* forecloses Plaintiff's argument because *Knight* says that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." Union Memo at 11 (quoting 465 U.S. at 285). While the Union is correct that *Knight* is about plaintiffs' assertion that the government listen or respond to their communications on public issues—which the Union ignores when arguing that *Knight* requires this Court to dismiss Count I—the Union ignores the fact, as they previously point out, Massachusetts law specifically gives Plaintiff the statutory right to seek a grievance with his employer without the Union. According to the Complaint, it was only the Collective Bargaining Agreement and the assertion by the Dean of the Law School that provide the basis to the contrary. The argument in *Knight* that one does not have a First Amendment right to have the government hear one's grievance is inapposite where state law provides that right under statute, but where the CBA between the Union and employer forecloses Plaintiff's ability to pursue such a grievance without the Union's representation. In other words, unlike *Knight*, the issue in this case is not whether Plaintiff has a First Amendment right to have the University listen to his grievance. Rather, the issue in this case is, once state law

gives Plaintiff the ability to file a grievance and requires his government employer to listen and respond to that grievance, can the employer and the Union collectively bargain to require the Union to represent Plaintiff in the grievance procedure and prevent Plaintiff from pursuing such a grievance on his own. Thus, if there is some assertion by any of the Defendants that Plaintiff cannot seek a grievance without being represented by the Union, that claim should not be dismissed.

## Conclusion

For the reasons stated herein, the Union's motion to dismiss should be denied.

Dated: February 4, 2022

Respectfully Submitted,

**Richard Peltz-Steele**

By:   /s/ Jeffrey M. Schwab

| | |
|---|---|
| Matthew L. Fabisch | Jeffrey M. Schwab* |
| Fabisch Law | Reilly Stephens* |
| 2 Dexter Street | Liberty Justice Center |
| Pawtucket, Rhode Island 02860 | 141 West Jackson Street, Suite 1065 |
| mlfabisch@yahoo.com | Chicago, Illinois 60604 |
| | Telephone: (312) 637-2280 |
| | Facsimile: (312) 263-7702 |
| | jschwab@libertyjusticecenter.org |
| | rstephens@libertyjusticecenter.org |
| *Attorneys for Plaintiff* | *admitted Pro Hac Vice |

## Certificate of Service

I certify that the foregoing Plaintiff's Response in Opposition to Defendant UMass Faculty Federation's Motion to Dismiss the Complaint was filed February 4, 2022, using the Court's CM/ECF system, which will provide notice of the filing to all counsel.

/s/ Jeffrey M. Schwab
Jeffrey Schwab
