IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MASSACHUSETTS

| | |
|---|---|
| RICHARD J. PELTZ-STEELE,<br><br>    Plaintiff,<br><br>v.<br><br>UMASS FACULTY FEDERATION, LOCAL 1895, AMERICAN FEDERATION OF TEACHERS, AFL-CIO; et al.,<br><br>    Defendants. | No. 1:21-cv-11590-WGY<br><br>Judge William G. Young |

**Response in Opposition to State Defendants' Motion to Dismiss**

Plaintiff Richard Peltz-Steele, a law professor at the University of Massachusetts School of Law at Dartmouth ("the University"), submits this Response in Opposition to the Motion to Dismiss of the State Defendants and accompanying Memorandum. *See* Dkt. 25 ("State MTD" or "the Motion"). The arguments set forth in State Defendants' Motion to Dismiss and Memorandum are substantively the same as the arguments set forth in the motion to dismiss and memorandum submitted by Defendant UMass Faculty Association ("the "Union"). Dkt. 22 and 23. Thus, for the same reasons set forth in Plaintiff's previously-filed Response in Opposition to the Union's motion to dismiss (Dkt. 27), the State Defendants' arguments should be rejected.

As a condition of his employment, Plaintiff Peltz-Steele is compelled by the Commonwealth of Massachusetts law to accept the Union as his exclusive bargaining representative for all terms and conditions of his employment, even though Professor Peltz-Steele is not a member of the Union.

1

The Supreme Court on at least three recent occasions recognized that schemes compelling public-sector employees to associate with labor unions impose a "significant impingement" on those employees' First Amendment rights. *Knox v. SEIU, Local 1000*, 567 U.S. 298, 310–11 (2012); *Harris v. Quinn*, 134 S. Ct. 2618, 2639 (2014); *Janus v. AFSCME, Council 31*, 138 S. Ct. 2448, 2483 (2018). In *Janus*, the Court recognized that a state's appointment of a labor union to speak for employees as their exclusive representative constitutes "a significant impingement on associational freedoms that would not be tolerated in other contexts." 138 S. Ct. at 2478. These "exclusive bargaining" schemes cannot be squared with the Supreme Court's First Amendment jurisprudence. The First Amendment protects "[t]he right to eschew association for expressive purposes," *Janus v. AFSCME, Council 31*, 138 S. Ct. at 2463 (2018), and "[f]reedom of association . . . plainly presupposes a freedom not to associate." *Roberts v. United States Jaycees*, 468 U. S. 609, 623 (1984).

The State Defendants rely on the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984), which they claim stands for the proposition that exclusive bargaining schemes are constitutional. But *Knight* does not address questions of compelled-speech or compelled-association. Instead, the public workers in *Knight* claimed a right to be heard by the state in particular "meet and confer" sessions with union representatives. That is not Plaintiff's claim here. The State Defendants also rely on the First Circuit's decisions in *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409, 414 (1st Cir. 2019) and *D'Agostino v. Baker*, 812 F.3d 240, 243-44 (1st Cir. 2016), both of which

rely on *Knight*. Further, *Reisman* rejected the claim of the plaintiff in that case on a specific interpretation of the relevant Maine statute, which is distinct from the law of the Commonwealth of Massachusetts at issue in this case.

This compelled association is not limited to contract negotiations. The CBA purports to require the Union's participation in any grievance procedures between Professor Peltz-Steele and his employer, the University. This grievance scheme stifles Plaintiff's speech, abridging his ability to express his views on matters of both personal and public concern. As did the Union, the State Defendants' memorandum asserts that Massachusetts law and the bargaining agreement do not prevent Professor Peltz-Steele from filing a grievance without the Union, but the bargaining agreement is self-contradictory and Professor Peltz-Steele was prevented from doing so by the Dean of the Law School, who claimed otherwise. In any event, to the extent that all Defendants concede in writing that Plaintiff is free to pursue a grievance without the Union representation, Plaintiff is willing to voluntarily dismiss Count II relying on that representation.

I. **Forcing Plaintiff to associate with the Union as his exclusive representative violates his First Amendment right to free speech and freedom of association.**

Under Massachusetts Public Sector Collective Bargaining Statute, Mass. Gen. Laws ch. 150E et seq., as a condition of his employment, Plaintiff must allow the Union to "act for and negotiate agreements covering all employees in the unit and shall be responsible for representing the interests of all such employees." ALM GL ch. 150E, § 5. These "interests" are precisely the sort of policy decisions that *Janus* recognized are necessarily matters of public concern. 138 S. Ct. at 2467.

Certification of the Union as the exclusive representative of the bargaining unit forces all employees in that unit into association with the Union. This coerced association authorizes the Union to speak on behalf of the employees whether or not they are members, whether or not they contribute fees, even if an employee completely disagrees with the Union's positions and speech. This arrangement compels both speech (the Union speaks on behalf of the employees, as though its speech is the employees' own speech) and association (the Union represents everyone in the bargaining unit without any choice or alternative for dissenting employees not to associate).

Compelling Plaintiff's association with the Union demeans his First Amendment rights. While it has not had occasion to directly address this issue, the Supreme Court has repeatedly emphasized that exclusive representation in the public-sector context imposes a "significant impingement" on public employees' First Amendment rights. *Janus*, 138 S. Ct. at 2483; *see Harris v. Quinn*, 134 S. Ct. 2618, 2640 (2014); *Knox v. Service Employees*, 567 U.S. 298, 310–11 (2012). Indeed, "[f]orcing free and independent individuals to endorse ideas they find objectionable is always demeaning. . . . [A] law commanding involuntary affirmation of objected-to beliefs would require even more immediate and urgent grounds than a law demanding silence." *Janus*, 138 S. Ct. at 2464 (2018) (quoting *West Virginia Bd. of Ed. v. Barnette*, 319 U. S. 624, 633 (1943) (internal quotation marks omitted)). Exclusive representation forces the employees "to voice ideas with which they disagree, [which] undermines" First Amendment values. *Janus*, 138 S. Ct. at 2464. Massachusetts law

commands Plaintiff's involuntary affirmation of objected-to beliefs. The fact that he retains the right to speak for himself in certain circumstances does not absolve a system by which the Union exclusively negotiates as his representative in his employment relations.

Exclusive representation is also forced association: Plaintiff is forced to associate with the Union as his exclusive representative simply by virtue of his employment. "Freedom of association . . . plainly presupposes a freedom not to associate." *Roberts*, 468 U.S. at 623. Yet Plaintiff has no such freedom, no choice about his association with the Union; instead his association is coerced by the Commonwealth's laws.

### A. The State Defendants' reliance on *Knight* as precedent preventing Plaintiff's claim is misplaced.

The State Defendants claim that this case is foreclosed by the Supreme Court's decision in *Minnesota State Board for Community Colleges v. Knight*, 465 U.S. 271 (1984). *See* State MTD at 8. But *Knight* does not control the outcome here. In *Knight*, the Supreme Court held that employees do not have a right, as members of the public, to a formal audience with the government to air their views. *Knight* did not decide whether such employees can be forced to associate with a union. As the *Knight* court framed the issue, "The question presented . . . is whether this restriction on participation in the nonmandatory-subject exchange process violates the constitutional rights of professional employees." 465 U.S. at 273.

The plaintiffs in *Knight* were community college faculty who dissented from the certified union. *Id.* at 278. The Minnesota statute at issue required that their employer "meet and confer" with the union alone regarding "non-mandatory subjects"

5

of bargaining. The statute explicitly prohibited negotiating separately with dissenting employees. *Id.* at 276. The plaintiffs claimed a constitutional right to take part in those negotiations.

The Court was clear what issue it was addressing: "[A]ppellees' principal claim is that they have a right to force officers of the State acting in an official policymaking capacity to listen to them in a particular formal setting." *Id.* at 282. In that context, the Court held that "[a]ppellees have no constitutional right to force the government to listen to their views. They have no such right as members of the public, as government employees, or as instructors in an institution of higher education." *Id.* at 283. The First Amendment guarantees citizens a right to speak. It does not deny government, or anyone else, the right to ignore such speech. Plaintiff does not claim that his employer—or anyone else—should be compelled to listen to his views. Instead, he asserts a right against the compelled association forced on him by exclusive representation.

*Knight* rejected the premise that employees could compel the government to negotiate with them instead of, or in addition to, a union. That question is distinct from Plaintiff's claim that the government cannot compel him to associate with the Union, and is not responsive to the question at hand: whether someone else can speak in Plaintiffs name, with his imprimatur granted to it by the government. He does not contest the right of the government to choose whom it meets with, to "choose its advisors," or to amplify the Union's voice. He does not demand that the government schedule meetings with him, engage in negotiation, or any of the other demands made

6

in *Knight*. He only asks that the Union not do so in his name.

Contrary to the State Defendants assertion, *Knight* does not compel this Court to dismiss Count I.

### B. The Union's reliance on First Circuit precedent it asserts prevent Plaintiff's claim is misplaced.

The State Defendants also invoke the First Circuit Court of Appeals decision in *D'Agostino v. Baker*, 812 F.3d 240 (1st Cir. 2016). But *D'Agostino* explicitly relied on *Knight*—which, as explained above is inapposite—and *Abood v. Detroit Board of Education*, 431 U.S. 209 (1977), *see* 812 F.3d at 243—which the Supreme Court explicitly overturned in *Janus*. As the *D'Agostino* court put it, "*Abood's* understanding that non-union public employees have no cognizable associational rights objection to a union exclusive bargaining agent's agency shop agreement points emphatically to the same result here, where no financial support for any purpose is required from non-union employees." *D'Agostino*, 812 F.3d at 243. The exact logic that the *D'Agostino* court relied on was explicitly rejected by the Supreme Court in *Janus*. Allowing states to force nonmembers to pay agency fees is inconsistent with the First Amendment. *Abood* failed to recognize the core First Amendment status of union speech in public-sector collective bargaining, which typically concerns matters of intense public interest. *Janus*, 138 S. Ct. at 2475–76, 2480. *Abood* relied on a free-rider rationale insufficient to justify compelled speech and association in other contexts. *Id*. at 2466–68. And *Abood* accepted the state interest in "labor peace" as a basis to impinge First Amendment rights. *Id*. at 2465–66. The *D'Agostino* court's reliance on the now-rejected logic of *Abood* cannot serve as binding precedent.

7

The Union asserts that to the extent that *Janus* overturned *D'Agostino*, this Court is still bound by the First Circuit's post-*Janus* decision in *Reisman v. Associated Faculties of the University of Maine*, 939 F.3d 409 (1st Cir. 2019). State MTD at 11. But *Reisman* is inapposite for at least three reasons. First, *Reisman* relied specifically on the statutory text of the Maine exclusive bargaining law. Reisman claimed that the Maine law forced him to have the exclusive bargaining agent union represent him as his personal representative. The First Circuit found that the Maine statute repeatedly makes clear that a union acting as an exclusive bargaining agent is the representative of a bargaining unit only, not of the individual employees. *Id.* at 412. By contrast, the Massachusetts statute at issue here does not make this distinction. The statute states that the exclusive representative shall have the right to act for and negotiate agreements covering "all employees in the unit" and shall be responsible for representing "the interests of all such employees." ALM GL ch. 150E, § 5. In other words, the *Reisman* court found it important that the Maine statute indicated that the exclusive bargaining agent represented only the bargaining unit, not the individual employees, and that distinction was fatal to Plaintiffs' argument. The Massachusetts statute at issue here is differently worded and does not specifically limit the exclusive representative's agency to only the bargaining unit itself.

*Reisman* is inapposite for two additional reasons that are set forth in what appear to be dicta. First, the court said that even if the distinction between the bargaining unit and individuals was not important under Maine law, and even if plaintiff had pleaded such a claim, that *Knight* is controlling precedent. As explained above, the

plaintiffs in *Knight* sought to have the government hear their lobbying; in this case plaintiff claims that it violates his First Amendment rights to be forced to have the Union lobby on his behalf. The *Reisman* court fail to engage with this important distinction. Second, the *Reisman* court suggests that *D'Agostino's* reliance on *Knight* is appropriate even in light of *Janus*. But while the *Reisman* court acknowledges that circuit precedent undermined by intervening Supreme Court precedent is not binding, 939 F.3d at 414, it ignores the fact, as explained above, that *D'Agostino* relied on a premise of *Abood*, which *Janus* overturned, and thus *D'Agostino* is inconsistent with *Janus*.

For these reasons, this Court should deny the State Defendants' motion to dismiss.

**II.  The bargaining agreement prevents Plaintiff from presenting grievances to his employer without permission of the Union in violation of his First Amendment rights.**

As alleged in the Complaint, when Plaintiff emailed the Dean of the Law School asking what the procedure was to file a grievance, the Dean responded informing Plaintiff that "[t]here isn't a separate system outside of the parties' CBA for filing a grievance. You would need to follow the same process described in the CBA, and the union would need to allow you to do so without their sponsorship." Compl. ¶ 28. In addition, the CBA provides that "[t]he Faculty Federation shall represent every member of the bargaining unit at various levels of the grievance procedures." Article XVII, § C.1.

Although, as State Defendants point out, Mass. Gen. Laws. ch. 150E, § 5, provides that "[a]n employee may present a grievance to his employer and have such grievance heard without intervention by the exclusive representative of the employee

9

organization representing said employee," State MTD at 13, Mass. Gen. Laws ch. 150E, § 8 provides that the University and the Union "may include in any written agreement a grievance procedure" that "shall . . . be the exclusive procedure for resolving any such grievance." The CBA also provides:

> If any member of the bargaining unit shall present any grievance without representation by the Federation, the disposition of the grievance shall be consistent with the provisions of this Agreement and shall not be deemed to change or otherwise modify the terms and conditions of the Agreement or create a precedent unless the Trustees and the Federation shall otherwise agree in writing. When members of the bargaining unit choose to handle their own grievance cases, they do so at their own peril.

Art. XVII, C.2.

At best, the provisions of the CBA contradict each other and contradict state law. Further, the Dean of the Law School understood and advised Plaintiff that he may not file a grievance without the Union representing him. If that was incorrect information as to what state law provides and incorrect information as to what the CBA provides, it none-the-less is the answer Plaintiff was given prior to filing this case. However, if now Defendants all concede in writing that an employee in the bargaining unit can bring a grievance to their employer without being represented by the Union, then Plaintiff is willing to voluntarily dismiss Count II in reliance on that representation.

Nonetheless, to the extent that any defendant asserts that Plaintiff must allow the Union to represent him in any grievance procedure, there is no basis to dismiss this claim.

The State Defendants assert that any claimed right under Count II fails as a matter of law under *D'Agostino* and *Reisman*. State MTD at 14. However, as explained above, the Massachusetts statute is not identical to the Maine statute: it does not specify that the union must represent the bargaining unit as an entity. Rather, the Massachusetts statute specifies that the exclusive representative shall have the right to act for and negotiate agreements covering "all employees in the unit" and shall be responsible for representing "the interests of all such employees." ALM GL ch. 150E, § 5. In other words, the Massachusetts statute is not the same as the one contemplated in *Riesman* and therefore, there is no basis to force individual employees to have the Union represent them in grievance procedures.

Second, the State Defendants assert that *Knight* forecloses Plaintiff's argument because *Knight* says that "[n]othing in the First Amendment or in this Court's case law interpreting it suggests that the rights to speak, associate, and petition require government policymakers to listen or respond to individuals' communications on public issues." State MTD at 14 (quoting 465 U.S. at 285). While the State Defendants are correct that *Knight* is about plaintiffs' assertion that the government listen or respond to their communications on public issues—which they ignore when arguing that *Knight* requires this Court to dismiss Count I—Massachusetts law specifically gives Plaintiff the statutory right to seek a grievance with his employer without the Union. According to the Complaint, it was only the Collective Bargaining Agreement and the assertion by the Dean of the Law School that provide the basis to the contrary. The argument in *Knight* that one does not have a First Amendment right

11

to have the government hear one's grievance is inapposite where state law provides that right under statute, but where the CBA between the Union and employer forecloses Plaintiff's ability to pursue such a grievance without the Union's representation. In other words, unlike *Knight*, the issue in this case is not whether Plaintiff has a First Amendment right to have the University listen to his grievance. Rather, the issue in this case is, once state law gives Plaintiff the ability to file a grievance and requires his government employer to listen and respond to that grievance, can the employer and the Union collectively bargain to require the Union to represent Plaintiff in the grievance procedure and prevent Plaintiff from pursuing such a grievance on his own. Thus, if there is some assertion by any of the Defendants that Plaintiff cannot seek a grievance without being represented by the Union, that claim should not be dismissed.

## Conclusion

For the reasons stated herein, the Union's motion to dismiss should be denied.

Dated: February 18, 2022

                                        Respectfully Submitted,

                                        **Richard Peltz-Steele**

                                        By:    /s/ Jeffrey M. Schwab

| | |
|---|---|
| Matthew L. Fabisch | Jeffrey M. Schwab* |
| Fabisch Law | Reilly Stephens* |
| 2 Dexter Street | Liberty Justice Center |
| Pawtucket, Rhode Island 02860 | 141 West Jackson Street, Suite 1065 |
| mlfabisch@yahoo.com | Chicago, Illinois 60604 |
| | Telephone: (312) 637-2280 |
| | Facsimile: (312) 263-7702 |
| | jschwab@libertyjusticecenter.org |
| | rstephens@libertyjusticecenter.org |
| *Attorneys for Plaintiff* | *admitted Pro Hac Vice |

**Certificate of Service**

I certify that the foregoing Plaintiff's Response in Opposition to State Defendants' Motion to Dismiss the Complaint was filed February 18, 2022, using the Court's CM/ECF system, which will provide notice of the filing to all counsel.

/s/ Jeffrey M. Schwab<br>
Jeffrey Schwab